IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALIGHT SOLUTIONS LLC, | ) |
|     Plaintiff/Counter-Defendant, | ) Case No.:20-cv-3043 <br> ) |
| v. | ) <br> ) Hon. Sharon Johnson Coleman |
| SUSAN THOMSON, | ) <br> ) Magistrate Judge Jeffrey Cole |
|     Defendant/Counter-Plaintiff, and | ) |
| EMBOLD HEALTH, INC., | ) |
|     Defendant. | ) |

**SUSAN THOMSON'S MOTION TO COMPEL ALIGHT SOLUTIONS LLC TO COMPLY WITH ITS DISCOVERY OBLIGATIONS**

Defendant/Counter-Plaintiff Susan Thomson ("Ms. Thomson"), pursuant Fed. R. Civ. P. 26, hereby moves this Court for an order compelling Plaintiff/Counter-Defendant Alight Solutions LLC ("Alight") to fully and complete answer certain of Ms. Thomson's Interrogatories and 30(b)(6) matters for examination. In support, Ms. Thomson states as follows:

**INTRODUCTION**

1. Alight filed suit against Ms. Thomson in the first instance alleging, *inter alia*, that she went to work for a competitor, Embold Health, Inc. ("Embold"), after Alight terminated her employment with Alight, and that taking a position with Embold violated certain obligations contained in her Severance Agreement. (Dkt. 1, ¶ 1.)

2. Ms. Thomson disputes that she violated her Severance Agreement and disputes that Embold competes with Alight. In addition to disputing the claims in Alight's Complaint, Ms.

Thomson alleges in a Counterclaim that Alight discriminated against her on the basis of age and gender. (Dkt. 69.)

## BACKGROUND OF DISCOVERY DISPUTE

3. Ms. Thomson issued targeted discovery to obtain information about (a) Alight's alleged competition with Embold and (b) information about Alight's employment practices with respect to women and persons over 40 years of age.

4. Alight has refused to fully respond to certain of Thomson's Interrogatories served on Alight, despite multiple attempts by Ms. Thomson's counsel to explain why Alight's answers are deficient and objections unfounded. Ms. Thomson's *First and Second Sets of Interrogatories directed to Alight* are attached hereto as **Exhibit A**.

5. In a further attempt to obtain this information, Ms. Thomson requested that Alight designate a representative to answer questions in depositions about Embold's competition with Alight and about Alight's its hiring and firing of senior level executives over the last three years. The 30(b)(6) rider setting forth the matters for examination is attached hereto as **Exhibit B**.

6. Alight's designated representatives were unable to answer targeted questions pertaining to Topics for Examination Nos. 5, 6 and 14, relating to specific instances where Embold competed against Alight and Alight's hiring and firing of its senior level executives in the last three years.

7. Counsel for the parties, Michael S. Scotti, Brandon Liss, and Steven Brenneman, communicated by telephone and by email about Alight's answers to Interrogatories No. 2, 13 and 14, and the failure of Alight's (30)(b)(6) designated representative to fully answer questions pertaining to Topics for Examination Nos. 5, 6 and 14, but were unable to come to an agreement regarding Alight's answers, necessitating the instant motion. Copies of emails exchanged by counsel are attached hereto as **Exhibit C**.

## THE DISCOVERY AT ISSUE

### A. Whether Embold is an Alight Competitor

8. Alight's Complaint against Ms. Thomson is replete with reference to Embold as a competitor of Alight. *E.g.*, Dkt. 1, ¶¶ 1, 23, 24, 46, 47, 59, 85, 94. Indeed, at times, Alight characterizes Embold as a "direct" competitor. *Id.* at ¶¶ 46, 47.[1]

9. Alight's characterization of Embold as a competitor is used throughout the Complaint to support Alight's claims that Ms. Thomson violated the non-compete provisions of her Severance Agreement and that information Ms. Thomson took from Alight could provide Embold a competitive advantage. *See id.* Competition between Alight and Embold is therefore directly relevant to the claims and defenses in this action.

10. Accordingly, Ms. Thomson requested in discovery that Alight "list every instance where Alight competed against Embold for a customer or client." **Ex. A**, Interrogatory No. 2.

11. Alight objected that Interrogatory No. 2 is "vague, overly broad, and unduly burdensome," but directed Ms. Thomson to its Response to Interrogatory No. 5, which asked Alight to describe its products and services and how those products and services compete against Alight. *Alight's Answers and Objections to Thomson's First Set of Interrogatories* is attached hereto as **Exhibit D**.

12. Alight's Answer to Interrogatory No. 5, which Alight relies upon in answering Interrogatory No. 2, provides:

---

[1] Alight filed a First Amended Complaint, which is also replete with reference to Embold as a competitor of Alight. *E.g.*, Dkt. 53, ¶¶ 1, 7, 24, 46, 47, 59, 125, 129. Indeed, the first paragraph states, "Alight brings this action to stop a former key executive named Susan Thomson ("Thomson") from violating certain non-solicitation and non-competition covenants … Alight also seeks to stop Thomson from transferring Alight's protected trade secrets to a competitor unlawfully. …Thomson's employment with Embold Health violates her covenants with Alight … and will result in the use and disclosure of Alight's confidential information and know-how to a competitor, Embold." Dkt. 53, ¶ 1.

> Alight states that its Healthcare Navigation Solutions products are designed to connect individuals with high quality, cost effective healthcare. These products are offered nationwide and enable clients, such as employers and health plans, to empower employees and participants to make simpler, smarter healthcare decisions and to improve the overall employee benefits experience. Alight's Navigation Solutions enable individuals to maximize their benefits, improve outcomes and lower overall health plan costs for clients' organizations, by, among other things: providing unbiased guidance in selecting a health plan and support for medical, dental, and vision benefits; finding highly-rated doctors, dentists, and eye care professionals in a specific area and network who meet individuals' preferences and healthcare needs; helping individuals understand and use their health benefits; and compare costs for care. Embold's products likewise identify and connect clients' employees with top-performing physicians in clients' health plans; improve quality, decrease unnecessary care and reduce cost. In further response, Alight incorporates herein paragraphs 2 and 4 of Alight's Complaint.

*Id.*, Answer to Interrogatory No. 5.

13. On its face, the answer to Interrogatory No. 5 is not responsive to Interrogatory No. 2. The answer vaguely asserts that Alight and Embold offer similar healthcare services that "reduce costs." Not all companies in the healthcare sphere are competitors and most every company in the world offering services would assert that its services "reduce costs." The answer to Interrogatory No. 5 is not sufficient to answer Interrogatory No. 2, which asks for instances of direct competition for clients and customers.

14. Ms. Thomson deposed two former Alight employees, her direct supervisor at the time she was terminated and the young man hired to replace her. Both were asked during their deposition to identify instances of competition between Alight and Embold. Neither could provide any direct or specific instances. Instead, both offered vague opinions that Alight views Embold and other health data companies as operating within Alight's competitive marketplace.

15. Brannon Lacey, Alight's former Chief Solutions and Strategy Officer, who was Ms. Thomson's supervisor at the time she was terminated, testified at his deposition that he could not recall a single instance of ever competing against Embold during the entire time he was employed at Alight. Pages from Lacey's Deposition Transcript are attached hereto as **Exhibit E**.

16. Patrick Lee, the man hired to replace Ms. Thomson as Alight's Executive Vice President of Sales, said of Embold, "they aren't what I would describe as a primary competitor, although they're in the space." Pages from Lee's Deposition Transcript are attached hereto as **Exhibit F**.

17. Similarly, a corporate representative for Alight who was deposed was unable to provide a single example of an instance where Embold competed against Alight, despite that representative being designated to answer questions pertaining to:

- "instance[s] that Alight competed against Embold for a customer's account" (**Ex. B**, Topic for Examination No. 6) and

- "products and/or services that Alight sells, markets, and/or provides to any other individual or entity that compete with Embold" (*id.*, Topic No. 5).

The corporate representative instead offered the same vague opinion that Embold "competes in practice" with Alight for various reasons, none of which were supported with specific facts or reference to documents.

18. Following those depositions, counsel for Ms. Thomson requested that Alight properly answer Interrogatory No. 2, even if Alight's answer is simply "none." Counsel defined the term "compete" in order to obviate Alight's vagueness objection and countered Alight's other objections. *See* **Ex. C**, email dated September 9, 2021, from M. Scotti to S. Brenneman and others. Moreover, as this Court knows, boilerplate objections are tantamount to making no objection at all. *See* authorities and discussion in *Kelley v. Board of Ed.*, 2012 WL 1108135, 2-3 (N.D. Ill. 2012).

19. Alight purported to supplement its answer to Interrogatory No. 2 by incorporating the April 29, 2021 deposition testimony of one of its 30(b)(6) deponents, even while its counsel argued that it would be "impossible" to answer Interrogatory No. 2 for a litany of reasons. Alight's S*upplemental Answer to Thomson's Interrogatory No. 2* is attached as **Exhibit G**.

20. From a technical perspective, "it is improper to answer an interrogatory by incorporating by reference deposition testimony or a response to another interrogatory." *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, No. 18 C 0825, 2020 WL 1701861, *6 (N.D. Ill. Apr. 8, 2020), *citing Hill v. City of Harvey*, No. 17 C 4699, 2019 WL 6173415, at *1 (N.D. Ill. Nov. 20, 2019); *Lewis v. Saint Margaret Mercy*, No. 2:11 cv 313, 2013 WL 214239, at *5 (N.D. Ind. Jan. 17, 2013). Moreover, a party is not prevented from obtaining an interrogatory response just because the information requested by the interrogatory is similar to other discovery already obtained. *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, 2020 WL 1701861 at *6.

21. Practically, however, Alight has identified *no instance* in which Alight and Embold competed for a specific customer or client. Given the position taken by Alight in its original complaint and First Amended Complaint – that Embold is a competitor of Alight and that Ms. Thomson violated non-competition covenants by taking a job with Embold – a direct answer to Interrogatory No. 2 identifying instances when Embold and Alight competed for a client is highly relevant as to the issue of whether they are competitors. Therefore, Alight must provide a specific answer to Interrogatory No. 2.

22. If there is no specific instance in which Alight and Embold have competed for a customer or client, then Alight is obligated to answer Interrogatory No. 2 with the answer "none." If there are such instances, then Alight is obligated to provide those instances. Alight's attempt to evade a straightforward answer to Interrogatory No. 2 – which is directly relevant to Alight's allegations that Ms. Thomson went to work for a competitor and provided sensitive documents to a competitor – is improper and should not be permitted.

B. **Information related to "other acts" of discrimination or retaliation**

23. Interrogatory Nos. 13 and 14 asked Alight to "identify all members of Alight's senior leadership or "XLT" team that Alight terminated (No. 13) or hired (No. 14) between

6

November 1, 2019 and November 1, 2020," providing in its response "each individual's initials, age, and gender." **Ex. A**, Interrogatory Nos. 13 and 14.

24. Alight initially refused to answer Interrogatory Nos. 13 and 14 at all, objecting that they were "vague, overly broad, unduly burdensome, and on the grounds that [they seek] information that is not relevant and not calculated to lead to the discovery of admissible evidence." *Alight's Amended Supplemental Answers and Objections to Thomson's Second Set of Interrogatories* is attached hereto as **Exhibit H**.

25. Alight then amended its answers, providing charts purporting to summarize the "individuals who were removed from (No. 13) or added to (No. 14) Alight's "XLT" distribution list between December 2019 and December 2020." *Id.*[2]

26. These answers are deficient because they do not identify persons hired or fired, but merely persons added to or removed from an e-mail distribution list, and do not provide information covering the date range requested, including November 2019.

27. In order to get more information about Alight's hiring and firing tendencies, which are directly relevant to the discrimination claims asserted in her Counterclaim, Ms. Thomson requested that Alight designate a representative to testify about "facts relating to Alight's hiring and firing of its senior executive level employees in the last three years." **Ex. B**, Topic for Examination No. 14.

28. Alight's designated witness was unable to provide information in response to counsel's question about Alight's hiring and firing of its senior executive level employees over the

---

[2] Alight further supplemented these charts by providing the names of those employees, but marked the information Confidential, subject to the Protective Order in this case.

Case: 1:20-cv-03043 Document #: 81 Filed: 09/28/21 Page 8 of 9 PageID #:579

last three years. In response to counsel's question of whether she was prepared to answer questions about individuals hired or terminated during the subject time-frame, the witness said she was not.[3]

29. As a general principle, discriminatory intent or the pretextual nature of an employment related decision may be proven by "other acts" of discrimination or retaliation. *Fudali v. Napolitano*, 283 F.R.D. 400, 403 (N.D. Ill. 2012), *citing Warren v. Solo Cup Co.*, 516 F.3d 627 (7th Cir. 2008); *Vance v. Union Planters Corp.*, 209 F.3d 438, 445 (5th Cir. 2000); *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1067 (3rd Cir. 1996) (*en banc* ); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261 (11th Cir. 2008). "Thus, discovery of information of other acts of discrimination like that alleged by the plaintiff is permissible under Rule 26." *Fudali*, 283 F.R.D. at 403 (noting that this concept is "basic").

30. Ms. Thomson therefore requests that Alight provide specific information identifying all employees hired in the last three years and fired in the last three years, including the employees' initials, age, and gender.[4]

WHEREFORE, Defendant/Counter-Plaintiff Susan Thomson respectfully requests the Court enter an order compelling Plaintiff/Counter-Defendant Alight Solutions LLC to fully and completely comply with its discovery obligations by answering Interrogatory Nos. 2, 13 and 14, specifically responding to Topics for Investigation Nos. 5, 6 and 14, and for any such further relief the Court deems reasonable and just.

Dated: September 28, 2021

Respectfully submitted,
**SUSAN THOMSON**

*/s/ Michael Scotti, III*
Michael Scotti III

---

[3] The transcript of the deposition of Alight's 30(b)(6) witness on this topic is not yet available.

[4] Ms. Thomson agreed that Alight's answer can be limited to U.S. employees only, excluding employees from other countries. *See* **Ex. C**, September 5, 2021 email from M. Scotti to S. Brenneman.

        Roetzel & Andress LPA
        30 N. LaSalle Street, Suite 2800
        Chicago, IL 60602
        Telephone 312-582-1605
        *mscotti@ralaw.com*

        Bret A. Cohen (IL ARDC #6217358)
        Jessica Jeffrey (*Pro Hac Vice*)
        NELSON MULLINS RILEY &
        SCARBOROUGH LLP
        One Post Office Square, 30th Floor
        Boston, MA 02109
        P. (617) 217-4700
        F. (617) 217-4710
        *Bret.Cohen@nelsonmullins.com*
        *Jessica.Jeffrey@nelsonmullins.com*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that, on September 28, 2021, they caused the foregoing document to be filed with the Court's CM/ECF system, which automatically serves a copy on all counsel of record.

        */s/ Michael Scotti*