UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALIGHT SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-defendant, | ) | |
| | ) | Case No. 20-cv-3043 |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| SUSAN THOMSON, | ) | |
| | ) | |
| Defendant/Counter-plaintiff. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alight Solutions, LLC ("Alight") brings this action against its former employee Susan Thomson ("Thomson") for misappropriation of trade secrets, breach of contract, and breach of the duty of loyalty. Thomson countersues for breach of contract, wrongful termination, and retaliation. Before the Court are the parties' cross motions for partial summary judgment. In addition, both parties have filed motions to strike evidence cited in support of the opposing party's motion. For the following reasons, the Court denies Thomson's motion to strike and grants in part and denies in part Alight's motion to strike. As described below, the Court grants in part and denies in part both Thomson's and Alight's motions for partial summary judgment.

**Background**

At bottom, the facts of this case are not wholly complex. The parties, however, have done their best to complicate and confuse the issues by failing to adhere to Local Rule 56.1. For example, in Alight's response to Thomson's Statement of Facts, (Dkt. 127), Alight often takes care to specifically cite the portion of the record supporting its dispute of the asserted fact, while in the same document citing broadly to its own Statement of Additional Facts. (*See, e.g.,* Dkt. 127 ¶ 18 ("Further disputed, as explained in Alight PSAF ¶¶ 14–28").) This method of controverting an opposing party's statement of facts runs contrary to the purpose of Local Rule 56.1—to "ensure[]

the facts material to the issues in the case and evidence supporting such facts are *clearly* organized and presented for the court's summary judgment determination." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) (emphasis added); *see also* N.D. Ill. R. 56.1(e)(3) (emphasis added) ("To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must *concisely* explain how the cited material controverts the asserted fact."). A response to a statement of fact is likewise not an opportunity for a party to argue the entirety of its case. Rather than highlighting the true material disputes in the case to aid the Court in providing expeditious rulings on their motions, the parties have inundated the Court with tedious disputes of immaterial facts. Doing so obscures the issues at the heart of the case. Keeping this in mind, the Court has compiled the facts relevant to this motion below. All facts are undisputed unless otherwise noted.

Alight is a limited liability company that "provides integrated benefits, payroll, and cloud solutions." Integral to Alight's services is its Healthcare Navigation Solutions, "which enables clients, such as employers and health plans, to empower employees and participants to make simpler, smarter healthcare decisions and to improve the overall employee benefits experience." In May 2017, Thomson assumed the role of Alight's Executive Vice President of Global Sales. After joining the company, Alight offered Thomson equity pursuant to the Incentive Units Award Agreement and the Capital Units Award Agreement (the "Equity Agreements"). Thomson accepted and executed the Equity Agreements. In November 2019, Alight's president informed Thomson that Alight intended to eliminate her position and separate her job duties into two separate roles in what Alight called a corporate restructuring. Thomson extended her departure date to January 31, 2020 to assist with the completion of certain projects (the identity of which are in dispute) and to transition her responsibilities.

In the month of January 2020, Thomson physically and electronically retained several documents containing Alight data. On January 9, 2020, Thomson forwarded an email containing

two PowerPoint slide decks titled "Enterprise Sales Training Opener December 2019 Final.pptx" and "SAP Partner Meeting 12.19_v3.pptx" to her personal email account. Thomson contends and Alight disputes that she did so for legitimate work purposes—that is, to view the documents on her personal device while on an airplane. Less than one week later, she printed out (at minimum) the first two pages of an Excel Spreadsheet titled "2019 alight solutions-sales and pipeline report through December-final.xlsx" (the "Excel File"). Thomson contends and Alight disputes that she retained these pages to calculate her production bonus amount. The parties also dispute whether Thomson printed any additional pages of the Excel File. At the end of January, Alight contends and Thomson disputes that Thomson printed a PowerPoint deck titled "Introducing Compass Healthcare Navigation Solutions," which contained sales information that Alight used to solicit prospective customers. In addition, because Thomson worked from home, she possessed a large amount of hard copy documents relating to her work with Alight that she shredded (save for the pages from the Excel File) on February 18, 2020.

Around the time of her departure from Alight, Thomson met with representatives from Accolade, Inc. ("Accolade") and Embold Health, Inc. ("Embold") regarding potential employment opportunities. Accolade is a key competitor of Alight in the Healthcare Navigation Marketplace. Embold is a healthcare data analytics company. Between October 21, 2019 and mid-February 2020, Thomson was in discussions with Accolade to become its executive vice president. One day before sending the PowerPoint slides to her personal email account, Thomson met with an Accolade representative about her candidacy. Around the end of January 2020, Thomson also met with Embold's Chief Commercial Officer to discuss Thomson's interest in joining Embold. On February 12, 2020, Thomson interviewed at Embold's headquarters. Thomson later accepted an offer to work for Embold as its Senior Vice President of Sales and Marketing starting in March 2020.

On March 6, 2020, Thomson entered into a Release of Claims and Non-Solicitation agreement (the "Severance Agreement") with Alight. Thomson read the Severance Agreement before signing it, including the separate (but attached) Alight Solutions LLC Severance Plan (the "Plan"). The Plan states that employees must sign a release of claims and return all Alight property in their possession to be eligible for severance benefits. This requirement was not explicitly contained in the Severance Agreement. Further, the Plan states that violations of the company's Code of Conduct, including saving files or documents belonging to or work product of the company to personal devices, forfeits all benefits under the Plan in addition to other penalties.

Between March and April 2020, Alight communicated with Thomson about her alleged violation of Alight's document retention policy. Ultimately concluding that Thomson violated its policies, Alight discontinued Thomson's severance payments on April 20, 2020 and reclassified Thomson's separation from the company within its human resources system to "Violation of Company Policy/Rules" from "Severance – Position Elimination".

Five months later, Thomson filed a complaint of age and sex discrimination against Alight with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). 55-year-old Thomson alleged that Alight unlawfully terminated her employment and replaced her with 42-year-old Patrick Lee ("Lee"). Four months later, Alight's board of directors elected to repurchase Thomson's equity. According to the Equity Agreements, an employee's equity is subject to repurchase between six and twelve months after an employee's termination from employment. If an employee is terminated for cause or commits a restrictive covenant violation, the Equity Agreements dictate that the repurchase of the equity units must be for less than their fair market. As defined in the agreements, a restrictive covenant violation is a material breach of any agreement with Alight containing covenants regarding non-competition, non-solicitation, non-disparagement, and/or non-disclosure obligations. In light of Alight's characterization of Thomson's termination, Alight

contends that it repurchased the equity at less than fair market value in accordance with the Equity Agreements.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Lovelace v. Gibson*, 21 F.4th 481, 483 (7th Cir. 2021). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).

**Motions to Strike**

Before proceeding to the merits of the motion, the Court first addresses the evidentiary issues raised in the parties' motions to strike. First, Alight moves to strike the declaration of Thomson's attorney Jessica Jeffrey (the "Jeffrey Declaration"). (Dkt. 131-16.) The declaration details settlement negotiations between Thomson's counsel and Alight's counsel from September 22, 2020 and October 1, 2020. Thomson contends that in retaliation for filing her CHRO complaint, Alight threatened in these conversations to deprive Thomson of the full value of her equity units and add Embold as a defendant unless she settled her claims.

The Court grants in part and denies in part Alight's motion to strike. First, Alight argues that the Jeffrey Declaration should be stricken as it is contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380, 127 S. C. 1769, 167 L. Ed. 2d 686 (2007) ("When opposing parties tell two

5

different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Jeffrey declares that Alight's counsel stated during a September 30, 2020 telephone conference that Thomson's termination had not yet been coded "for cause." Further, Jeffrey contends that Exhibit C to the declaration, an email between counsel, confirms Alight's "threat" to recode Thomson's termination.

Alight produced its human resources records, which directly contradict the Jeffrey Declaration. The records show that on April 20, 2020—five months before the phone conversation—Alight changed its coding of Thomson's termination from "Involuntary > Severance – Position Elimination" to "Involuntary > Violation of Company Policy/Rules". (Dkt. 135-6.) Further, Exhibit C only supports Alight's evidence that the recoding had already taken place. It states that "for purposes of settlement only … Alight would be willing to *compromise* on its position on [Thomson's] termination with Cause … to permit repurchase of any [equity units] at fair market value as defined in the agreements, as opposed to Cost[.]" (Dkt. 131-16, at 9–11.) Based on the evidence presented to the Court, no reasonable juror could conclude that Alight's counsel threatened to recode Thomson's termination to "for cause" in September 2020 because the recoding had taken place five months earlier. Therefore, paragraphs 4 through 7 and Exhibit C of the Jeffrey Declaration are stricken based on total contradiction of the record.

The Court will not strike Exhibit A of the declaration on these grounds. Exhibit A contains another email between the parties' counsel in which Alight counsel states that if "Embold cannot articulate any steps it's taken in these areas, then we will conclude that the conditions are not in place for any settlement, and Alight will consider amending its Complaint to add claims against Embold." (Dkt. 131-16, at 5.) Alight attempts to present evidence that it added Embold to the suit for proper purposes and not in retaliation. Indirect evidence of Alight's intent is not the kind of

6

irrefutable, uncontestable evidence presented in *Scott v. Harris*, but rather the basis for a routine dispute of fact. Therefore, the Court will not strike Exhibit A of the Jeffrey Declaration.

Alternatively, Alight contends that the Jeffrey Declaration is inadmissible under Federal Rule of Evidence 408, which prohibits the use of settlement negotiations to prove the validity or amount of a disputed claim or to impeach a witness. At the time of the referenced communications, however, the parties were not discussing settlement on the retaliation claim—nor could they have been, as the communications themselves form the basis for Thomson's retaliation claim. "[W]hen a settlement discussion concerns Claim A, and statements from that discussion are later offered to prove or disprove liability on Claim B, Rule 408(a) does not make those statements inadmissible." *Wine & Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 541 (7th Cir. 2017). By definition, Alight's allegedly retaliatory statements could not have also served as settlement negotiations for said retaliation. Therefore, the Jeffrey Declaration is not barred under Rule 408.

Finally, Thomson's failure to disclose Jeffrey as a fact witness for her knowledge of settlement communications between counsel, even if improper, would be harmless error. *See* Fed. R. Civ. P. 37(c)(1) (permitting use of a witness to supply information where failure to disclose was harmless); *see also Lukis v. Whitepages Inc.*, 542 F. Supp. 3d 831, 835 (N.D. Ill. 2020) (Feinerman, J.) (holding that plaintiff's failure to disclose counsel as a witness was harmless error). Jeffrey as counsel and the content of the settlement negotiations were clearly known to Alight. Thus, Thomson's failure to timely disclose her as a witness is harmless error. In sum, Alight's motion to strike the Jeffrey Declaration is granted in part (striking paragraphs 4 through 7 and Exhibit C) and denied in part (permitting the remainder of the declaration).

Next, Thomson moves to strike the declaration of Jeff Barry (the "Barry Declaration"). (Dkt. 113-25.) Barry, Alight's director of investigations, states that Alight used a data protection platform called Digital Guardian, which (among other things) kept track of Thomson's work

7

computer data. Attached to the Barry Declaration are two Digital Guardian activity reports that he used to prove that Thomson printed the Excel File and the "Introducing Compass Healthcare Navigation solutions" PowerPoint deck, and that Thomson sent three emails in January 2020 to Craig Rosenberg, none of which provided input on any sales presentations. (*Id.* ¶¶ 6, 8–9.)

Thomson moves to strike the Barry Declaration because Alight disclosed the Digital Guardian activity reports after the discovery deadline passed. Courts use the following factors to guide their decision on whether to sanction a failure to comply with Rule 26(a) or (e): "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Caterpillar, Inc.*, 324 F.3d at 857 (citation omitted). "Whether a failure to comply with Rule 26(a) or (e) is substantially justified, harmless, or warrants sanctions is left to the broad discretion of the district court." *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)). Thomson contends she will be prejudiced by Alight's use of the Barry Declaration because she did not have an opportunity to depose Barry due to the late disclosure and therefore cannot to rebut the information contained in the reports. However, Thomson did not request an opportunity to depose Barry or object to the disclosure at the time it was made. Although the fact discovery deadline had closed one month before the disclosure, the parties were still completing depositions, including Thomson's, up to December 2021. (Dkt. 98.) For these reasons, the Court in its discretion denies Thomson's motion to strike.

**Motions for Summary Judgment**

Thomson moves for summary judgment on Alight's breach of contract, misappropriation of trade secrets, and duty of loyalty claims. Alight moves for summary judgment on its breach of

contract claim as to the Severance Agreement as well as Thomson's counterclaims. The Court rules as follows.

Breach of Contract – Severance Agreement

Under Illinois law, a plaintiff's breach of contract claim must allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (citing *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010)). Thomson alleges that Alight violated the agreement by terminating her severance payments in April 2020 (Count I of Thomson's counterclaim). Alight argues that its nonperformance was excused because Thomson first failed to adhere to the terms of the agreement by retaining, electronically forwarding, and failing to destroy Alight's files and confidential information (Count V of Alight's complaint).

Before the Court can determine whether Thomson breached the Severance Agreement, it must construe its operative terms. The Severance Agreement itself does not contain a clause restricting Thomson's retention of Alight's data. Rather, Alight argues that the Severance Agreement incorporates by reference the Severance Plan—a separate document that declares a failure to adhere to Alight's Code of Conduct (including saving company files or documents to personal devices) will result in forfeiture of severance benefits. (*See* Dkt. 120-1, at 76.) "[A] contract may incorporate by reference all or part of another document if it 'show[s] an intention to incorporate the document and make it part of the contract.'" *Cage v. Harper*, 42 F.4th 734, 738 (7th Cir. 2022) (quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002)). The party seeking to enforce the allegedly incorporated document's terms bears the burden of showing a clear and specific intention to make the document part of the contract. *Id.* "Illinois law imposes a strong

9

presumption against provisions that easily could have been included in the contract but were not." *Holmes v. Godinez*, 991 F.3d 775, 780 (7th Cir. 2021) (internal quotations omitted).

The Severance Agreement refers broadly to the Plan by directing the employee to "[r]efer to [the Severance Plan] for additional details regarding severance pay and other benefits and features." (Dkt. 120-1, at 69.) It further states that "[d]etails, calculations and definitions relating to severance benefit calculations are governed at all times by the terms of the [Severance Plan]." (*Id.*) It does not cite to a specific provision of the Plan that requires return of all Alight property at the time of termination. The Severance Agreement details other requirements with which Thomson must comply to remain eligible for her severance benefits, such as its non-solicitation and non-disparagement clauses. Alight easily could have included a provision that required Thomson's return of Alight property or Thomson's compliance with the restrictions as outlined in the Plan. Because Alight did not do so, the Court does not conclude that it clearly and specifically stated its intent to incorporate the Plan's document retention policy or the Plan as a whole. The Court denies Alight's motion for summary judgment on Count V of the complaint and Count I of Thomson's counterclaim. The Court grants summary judgment for Thomson as to Count V of the complaint.

Breach of Contract – Equity Agreements

Next, Alight alleges that Thomson breached the Equity Agreements by retaining Alight materials and performing services for a competitor (Counts III and IV of the complaint). Thomson responds that she did not breach the agreements and therefore Alight wrongfully coded her termination as "for cause" and failed to comply with its obligations under the agreements (Count II of the counterclaim). Each party moves for summary judgment on the other's claims.

First, Thomson contends that the non-compete provisions of the Equity Agreements are overbroad and therefore unenforceable because they preclude Thomson from working for any

company in her broadly defined industry.  "The framework Illinois[1] courts apply to a particular covenant depends on whether the covenant not to compete is ancillary to an employment agreement or sales agreement."  *Harris v. Cent. Garden & Pet Co.*, No. 09 C 2354, 2011 WL 3290334, at *3 (N.D. Ill. Aug. 1, 2011) (Chang, J.)  Unlike restrictive covenants in employment contracts, Illinois courts only require that covenants ancillary to the sale of a business be "reasonable in duration, geographical area, and scope to be enforceable."  *Id.*

To determine whether a restrictive covenant is tied to employment or a business sale, courts "generally focus on facts demonstrating the intent of the parties to protect the integrity of the sale, such as requiring execution of the agreement as a condition precedent to the sale, and identifying the agreement as a necessary closing document."  *Health Pros., Ltd. v. Johnson*, 339 Ill. App. 3d 1021, 1031, 791 N.E.2d 1179 (3d Dist. 2003).  In this case, the execution of the non-competition provision was required before the execution of the equity purchase as in *Health Professionals, Ltd. v. Johnson.*  The Equity Agreements also identify their execution as a necessary closing document.  Considering these factors, the Court finds that non-compete provisions are restrictive covenants ancillary to the sale of a business.

Applying the less stringent standard, the Court holds that the restrictive covenants in the Equity Agreements are enforceable.  Thomson signed off on the Equity Agreements, including a clause that Thomson found the agreements to be reasonable.  (Dkt. 134 ¶ 4.)  This is sufficient evidence to conclude that the Equity Agreements are not overbroad and unreasonable.  *See Hess Newmark Owens Wolf Inc. v. Owens*, 415 F.3d 630, 633 (7th Cir. 2005) ("We see no reason to ignore [defendant's] representation to her colleagues … that she would not challenge the covenants' reasonableness later.").

---

[1] Although Thomson contends that Connecticut law applies, she acknowledges that her argument remains the same under Illinois law.  Because there is no outcome determinative conflict, the Court applies Illinois law.  *W. Side Salvage, Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 223 (7th Cir. 2017).

Although it finds that the restrictive covenants are enforceable, the Court cannot determine whether either party breached the Equity Agreements because genuine disputes of material fact relevant to the materiality of Thomson's breach remain. "Although the interpretation of an established written contract is generally a question of law for the court, the question of whether or not a particular breach of a contract is material is a question of fact." *Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 868 (7th Cir. 2012) (quotations omitted). As a result, Alight's motion for summary judgment as to Count II of Thomson's counterclaim and Thomson's motion for summary judgment as to Counts III and IV of the complaint are denied.

Trade Secrets

Thomson also moves for summary judgment on Counts I and II of Alight's complaint, which allege that Thomson misappropriated trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*, and the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq*. To prevail on its trade secret claims, Alight must show that Thomson misappropriated its trade secrets to its detriment. The Court analyzes Alight's DTSA and ITSA claims in tandem because the parties do not identify any pertinent differences in the statutes. *Aon PLC v. Infinite Equity, Inc.*, No. 19 C 7504, 2021 WL 4034068, at *11 (N.D. Ill. Sept. 3, 2021) (Kness, J.) (analyzing defendant's motion to dismiss DTSA and ITSA claims together).

The Court cannot rule on these claims because genuine disputes of material fact remain. Thomson asserts that she did not forward the emails containing Alight's trade secrets for improper purposes, but rather to complete work offline and to calculate her bonus. Alight argues that Thomson misappropriated its data by improperly retaining materials on the eve of her termination and while she was in communications with Alight's competitors about job opportunities. These disputes preclude resolution of Alight's trade secrets claims at summary judgment. Therefore, Thomson's motion is denied as to Counts I and II of Alight's complaint.

12

Duty of Loyalty

Thomson's motion for summary judgment as to Alight's breach of the duty of loyalty claim is likewise denied. In Illinois, employees owe a duty of loyalty to their employers such that they may not improperly compete with their employer or solicit their employer's customers. *Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 831 (N.D. Ill. 2006) (Grady, J.); *see also RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 877 (N.D. Ill. 2001) (Denlow, J.) (holding that defendant employee breached his duty of loyalty by downloading plaintiff employer's data during employment to compete with employer). As previously discussed, whether Thomson retained or downloaded Alight's data for improper use is a disputed question of fact. *See Indeck Energy Services, Inc. v. DePodesta*, 451 Ill. Dec. 289, 305, 183 N.E.3d 746 (2021) (citing *Thompson v. Gordon*, 241 Ill. 2d 428, 438–39, 948 N.E.2d 39 (2011)) ("The question of whether a defendant breached his duty is a question of fact."). Therefore, summary judgment as to Count VI of Alight's complaint is denied.

Employment Discrimination

Thomson brings counterclaims of age and sex discrimination under the ADEA, Title VII, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. Ann. § 46a-60.[2] She alleges that Alight terminated her employment on the basis of age and sex and replaced her with a younger male counterpart. Under Title VII, an employer cannot discriminate against any individual with respect to her "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA similarly protects employees from age discrimination. *See* 29 U.S.C. § 6(a)(1).

Because Thomson elects to use the *McDonnell Douglas* burden shifting framework, she must show evidence that "(1) she is a member of a protected class, (2) she was meeting the defendant's

---

[2] The parties do not dispute that "Connecticut antidiscrimination statutes should be interpreted in accordance with federal antidiscrimination laws." *Patino v. Birken Mfg. Co.*, 304 Conn. 679, 689 (2012) (internal quotations omitted). Therefore, Thomson's Connecticut state law claims rise and fall with her federal claims.

legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018) (quoting *Carson v. Lake Cnty., Ind.*, 865 F.3d 526, 533 (7th Cir. 2017)). If she can make a prima facie case of discrimination, "the burden shifts to the employer to offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to show that the employer's stated reason was a pretext." *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 601–02 (7th Cir. 2020). The *McDonell Douglas* framework can be applied to both ADEA and Title VII claims. *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 960 (7th Cir. 2021).

As to both Thomson's sex and age discrimination claims, Alight argues that Thomson has failed to make a prima face case of discrimination because she has not shown that similarly situated employees were treated more favorably. Because Alight claims that Thomson was let go during a restructuring, Thomson must provide evidence that employees not in Thomson's protected class were treated more favorably, not just that she was replaced by a younger, male employee. *See Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 720 (7th Cir. 2021) (citing *Collier v. Budd Co.*, 66 F.3d 886, 890–91 (7th Cir. 1995)). Without citation to any case law or facts, Thomson claims that she was replaced by a younger man (Lee) who was treated more favorably because he was hired with a substantially similar salary to Thomson's even though (according to Thomson) he lacked adequate credentials.

Even if this were sufficient to support a prima facie case of age and sex discrimination, Thomson has not sufficiently rebutted Alight's proffered reason for Thomson's termination. Assuming Thomson has established a prima facie case, Alight responds that its corporate restructuring served as a nondiscriminatory reason for letting Thomson go. The burden therefore shifts back to Thomson to show that Alight's purported reason for termination is pretextual. *Skiba*, 884 F.3d at 724. "To meet this burden, [Thomson] must identify such weaknesses, implausibilities,

14

inconsistencies, or contradictions in [Alight's] asserted reason[s] that a reasonable person could find [them] unworthy of credence." *Id.* (quoting *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012)).

Again, Thomson's response to Alight's motion is unconvincing and unsupported. Thomson claims that Alight's asserted reason for the termination is pretextual because there is no evidence that Alight underwent a "global restructuring of anything" and that "Thomson's duties were never eliminated by Alight, they were just distributed differently." (Dkt. 130, at 20.) First, Alight did not claim that it underwent a global restructuring. Alight contends only that Thomson's global sales position was eliminated due to a restructuring. The fact that her responsibilities were redistributed support rather than rebut Alight's proffered reason for termination because redistribution of responsibilities aligns with the steps normally taken during a restructuring. Additionally, as to Thomson's age discrimination claim, that Alight's president told Thomson that the company needed to move in a new direction to "re-energize sales" is in itself insufficient to support a finding of pretext. *See Marnocha*, 986 F.3d at 722 (internal quotations omitted) ("[S]eeking a 'high energy person' to fill the open … role, without more, does not evidence an inappropriate focus on age.").

Ultimately, Thomson bears the burden of presenting evidence "that would allow a jury to find a connection between [her age and sex] and the adverse action[.]" *Groves v. S. Bend Cmty. Sch. Corp.*, 51 F.4th 766, 770 (7th Cir. 2022). Because Thomson has not met this burden, her employment discrimination claims do not survive summary judgment.

Retaliation

Thomson also claims that in response to filing her complaint with the CHRO on September 14, 2020, Alight retaliated against her by repurchasing her equity units at cost as opposed to at fair market value and amending its complaint to add her new employer, Embold. To survive summary judgment as to her retaliation claims, Thomson must provide evidence of "(1) a statutorily protected

15

activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Skiba*, 884 F.3d at 718 (quoting *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017)).

The parties' dispute hinges on the third element—causation.[3] Because the Court struck portions of the Jeffrey Declaration, the only admissible evidence of retaliation Thomson puts forward as to Alight's repurchase of the equity units is suspicious timing. Whether the Court views temporal proximity of an adverse action to a protected activity as evidence of retaliation depends largely on context, but such an inference likely will not be drawn where more than a few days elapses between the two. *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). Here, no such inference exists because the equity repurchase occurred months after Thomson filed her CHRO complaint. Further, the Equity Agreements confined Alight's repurchase of the shares to a six-month timeframe. Without more, timing alone cannot sustain Thomson's retaliation claim as to Alight's repurchase of her equity.

Thomson's retaliation claim as to Alight's suit against Embold similarly fails. Thomson argues that one week after filing her CHRO complaint, Alight threatened to add Embold as a defendant. First, the context of email portion cited by Thomson negates any inference that it served as a threat in response to Thomson's discrimination charge. (Dkt. 131-16, at 5–6.) Further, Alight did not add Embold as a defendant until eight months later. Without additional evidence of a causal link, Thomson's allegations of retaliation cannot proceed.

**Conclusion**

For the foregoing reasons, the Court denies Thomson's motion to strike [125]. Alight's motion to strike [135] is granted in part and denied in part. As to Thomson's motion for partial

---

[3] Alight perfunctorily denies that its suit against Embold constituted an adverse action against Thomson. Because Alight offers no legal basis or further explanation for its argument, it is waived. *Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) (citation omitted) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived.").

summary judgment [118], the Court grants the motion as to Count V of Alight's complaint and denies the motion as to the remaining counts. Alight's motion for partial summary judgment [108] is granted as to counterclaims III–V and denied as to Count V of the complaint and counterclaims I–II.

IT IS SO ORDERED.

Date: 3/22/2023

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge